IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALICE RUSH                                                                                          PLAINTIFF

VS.                                                                    CIVIL ACTION NO. 3:14cv496-CWR-FKB

CAROLYN W. COLVIN, ACTING COMMISSIONER                              DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Alice Rush of the Commissioner of Social Security's final decision denying Rush's request for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). In rendering this Report and Recommendation, the Court has carefully reviewed the Administrative Record [8] regarding Rush's claims (including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion for Summary Judgment [9] and supporting memorandum [10], Defendant's Motion for an Order Affirming the Commissioner's Decision [11] and supporting memorandum [12], and Plaintiff's rebuttal brief [13].

For the reasons discussed in this Report and Recommendation, the Court finds that the Commissioner's decision is supported by substantial evidence and hereby recommends that the decision be upheld.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Rush, age 41 at the time of the hearing decision, appeals the Social Security Administration's denial of benefits. On February 14, 2011, Rush filed an application for

supplemental security income, alleging disability beginning February 4, 2011. [8] at 9.[1]

Plaintiff alleges that she is unable to work due to mental problems, nerves, and a torn ligament in her left knee. *Id.* at 155. Both her initial claim and her Request for Reconsideration were denied. *Id.* at 105, 114.[2]

The ALJ held a hearing on January 28, 2013, during which Rush was represented by counsel. *Id.* at 55. According to her hearing testimony, Rush finished the eleventh grade, but never obtained a G.E.D., although she was enrolled in a G.E.D. course at the time of the hearing. *Id.* at 65. She testified that she last worked as a motor parts assembler. *Id.* at 68. At the hearing, the vocational expert classified Rush's last work as a parts sorter with a light exertion level, specific vocational preparation level ("SVP") of 2, and unskilled. *Id.* at 77.

The ALJ issued an unfavorable decision on April 23, 2013. *Id.* at 9-18. The Appeals Council denied Rush's request for review of the ALJ's decision on May 30, 2014, and this appeal followed. *Id.* at 1.

In the ALJ's April 2013 decision, she worked through the familiar sequential evaluation process for determining disability.[3] The ALJ found that Rush had not engaged in substantial

---

[1]Citations reflect the original pagination of the administrative record.

[2]This is Plaintiff's third application for disability benefits. [8] at 9; [12] at 1. Plaintiff appealed a previous denial to this Court. *See Rush v. Astrue,* Civil Action No. 3:13cv915-CWR-FKB. In that civil action, the Court affirmed the Commissioner's decision denying benefits.

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

gainful activity since February 14, 2011, her application date. *Id.* at 11.  The ALJ concluded that Rush has the severe impairments of "obesity, anxiety, depression, asthma, degenerative joint disease of the bilateral knees, and borderline intellectual functioning." *Id.*  Nevertheless, the ALJ found that Rush did not have an impairment or combination of impairments of Listing severity. *Id.*  Considering the record, the ALJ determined that Rush has the "residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she must have simple instructions only and no more than occasional contact with the public and co-workers. Additionally, the claimant should have no exposure to dusts, fumes, or noxious odors." *Id.* at 13.  The ALJ stated that she "considered the claimant's complaints of total disability but [found] them less than fully credible to the extent they are inconsistent with the residual functional capacity" quoted above. *Id.* at 15.  Considering the residual functional capacity as found by the ALJ, and after consulting a vocational expert, the ALJ concluded that Rush would be able to perform the requirements of silverware wrapper (light, with SVP 1), textile sorter (light, with SVP 2), and garment sorter (light, with SVP 2). *Id.* at 18.  Accordingly, the ALJ found that Rush

---

(3)  whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)  whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)  whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

was not disabled from February 14, 2011, the date of her application, through the date of the decision, April 23, 2013. *Id.* at 18.

## II. MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Rush's records in their briefs, and the ALJ provided a thorough summary of the records in her decision. Nevertheless, some of the medical records should be noted.

Plaintiff sought treatment three times from Dr. A. P. Soriano at the Medical Surgical Arts Clinic, Philadelphia, Mississippi, between November 8, 2010 and February 1, 2011. *Id.* at 260-263 (Exhibit B2F). The notes of her visit in February 2011 show that she sought treatment for pain in the center of her chest and upper back due to moving a refrigerator and deep freezer. *Id.* at 261. Other visits during 2011 and 2012 demonstrate that Rush sought treatment from Dr. Soriano for a variety of ailments, including knee pain, sinus pressure, nausea, vomiting, and low back pain. *Id.* at 461-480.

On June 22, 2012, Dr. Soriano also completed a form entitled "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)." *Id.* at 380-84. The ALJ accorded "little weight" to Dr. Soriano's opinion because the "doctor's own records fail to establish the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." *Id.* at 17. The ALJ also called Dr. Soriano's opinion "conclusory, providing very little explanation of the evidence relied on in forming that opinion," and the ALJ stated that Dr. Soriano relied heavily on Rush's subjective complaints. *Id.*

In the medical form, Dr. Soriano stated that Rush's maximum ability to lift and carry on an occasional basis was less than ten pounds, and that her maximum ability to lift and carry on a frequent basis is less than ten pounds. *Id.* at 380. He stated that Rush's maximum ability to stand and walk with normal breaks during an eight-hour day would be less than two hours, and that her maximum ability to sit with normal breaks during an eight-hour day would be less than two hours. *Id.* Dr. Soriano estimated that Rush could sit for ten minutes before changing position, could stand for fifteen minutes before changing position, must walk around every twenty minutes, must walk fifteen minutes each time, and needs the opportunity to shift at will from sitting or standing/walking. *Id.* at 381. He also estimated that Rush will sometimes need to lie down at unpredictable intervals during a work shift. *Id.* Dr. Soriano stated that the medical findings that support these limitations are Rush's "degenerative joint disease, asthma, low back pain, and anemia." *Id.*

With regard to postural activities, Dr. Soriano stated that Rush should never twist, stoop, crouch, climb stairs, or climb ladders. *Id.* at 382. He found that the following physical functions are affected by her impairment: reaching (including overhead) and pushing/pulling. *Id.* He also stated that handling (gross manipulation), fingering (fine manipulation), and feeling were not affected by her impairment. *Id.* Dr. Soriano concluded that these physical functions are affected "due to diagnoses as previously listed." *Id.* He stated that the medical findings that support this are his "diagnoses." *Id.*

Dr. Soriano found that Rush has certain environmental restrictions. *Id.* at 383. He found Rush should avoid all exposure to extreme cold and heat. *Id.* Likewise, he determined that Rush should avoid even moderate exposure to wetness and noise. *Id.* Finally, he found that Rush

should avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc., as well as hazards, such as machinery, heights, etc. *Id.*

When asked by the form to describe how these environmental factors impair activities and to explain what medical findings support these limitations, Dr. Soriano stated that she should avoid cold, heat, and wetness due to arthritis. *Id.* Rush's asthma was the basis for his recommendation to avoid all exposure to fumes, odors, etc. *Id.* He recommended avoidance of machinery, heights, etc., based on all diagnoses. *Id.* When asked about any other work-related activities that are affected by the impairments, and what medical findings support this, the doctor replied, "she cannot kneel, crawl, balance due to her diagnoses as listed previously. Seeing, hearing, speaking[:] no limitations, [and] she is not mentally impaired." *Id.* Finally, he concluded that Rush's impairments or treatments would cause her to be absent from work greater than three times a month. *Id.* at 384.

Dr. Azhar Pasha of the Riley Hospital, Meridian, Mississippi, performed a consultative examination on April 1, 2011. *Id.* at 355. He found that Rush stood five feet, five inches tall, and weighed 236 pounds without shoes. *Id.* He found that Rush's lungs were "clear to auscultation, percussion. No wheezing, no rales." *Id.* As to her extremities, Dr. Pasha's impression was "[s]ignificant for pain and crepitus on flexion in the left knee area. Flexion of the left knee limited by 5 degrees. Extension is not limited. There is no knee instability. Full range of motion [in] all the extremity joints of the body are noted." *Id.* As to Rush's lower back, he found that it had "normal shape and contour," that "[s]traight leg raising test is negative," and that she had a "full range of motion [in the] pelvic girdle [and] lumbar spine." *Id.* 355-356. Although Rush refused to squat due to left knee pain, she could heel-to-toe walk, and he

determined that her "[g]ait is not antalgic, and cane is not medically necessary at this time." *Id.* at 356. The doctor found that Rush had normal grip and dexterity in both hands. *Id.* He determined that she was "[p]ositive for mild anxiety, mild depression with no current suicidal ideation." *Id.* His final diagnoses were "history of being overweight, history of gastroesophageal reflux disease, hypertension, insomnia, anxiety disorder with mild depression with no suicidal ideation, history of asthma, and history of left knee arthroscopic surgery with persistent pain." *Id.*

On March 3, 2011, Ericia Carter, Rush's case manager at Weems Mental Health Center, completed a form from the Mississippi Office of Disability Determination Services that asked for functional information regarding Plaintiff. *Id.* at 265-267. The ALJ accorded "little weight" to this opinion because Carter "is not a physician, and the limitations she sets out are not supported by her treatment notes or the other medical evidence of record." *Id.* at 16.

In the form, Carter stated that Rush "sees the nurse practitioner every 3 months and the therapist every month and the case manager every week." *Id.* at 265. She stated that Rush's last appointment was January 6, 2011, and that she had known Rush for one year and one month. *Id.* Carter described Rush's current diagnosis as "major depressive disorder in remission, antisocial personality disorder, rule out borderline intellectual functioning," and noted that the nurse practitioner, Susan Bobo, had made the diagnosis. *Id.* Carter concluded that Rush had good ability to follow work rules. *Id.* at 266. She stated that Rush had poor ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, and deal with work stresses. *Id.* Carter found that Rush had a fair ability to function independently and maintain attention/concentration. *Id.* When asked to describe the limitations, Carter stated that Rush "can

follow rules when given but she cannot work well with others. [Rush] doesn't do well in public and doesn't interact with others. [Rush] does live by herself [with] her two children and can function some independent[ly]." *Id.* Carter concluded that Rush had a fair ability to understand, remember, and carry out complex job instructions; detailed, but not complex job instructions; and simple job instructions. *Id.* When asked to describe these limitations, Carter responded that Rush "has fair intellectual ability and doesn't remember what she is told to do a lot. [Rush] has problems following through instructions because she doesn't understand or forg[ets]." *Id.* Carter stated that Rush has a good ability to maintain personal appearance, and a fair ability to behave in an emotionally stable manner, relate predictabl[y] in social situations, and demonstrate reliability." *Id.* When asked to describe her findings that support this assessment, Carter stated that Rush's "appearance is clean and neat. [Rush] stays depressed and doesn't like going out and interacting [with] others. [Rush] doesn't exhibit good judgement [sic] when in social settings." *Id.*

On March 29, 2011, Jan P. Boggs., Ph.D., conducted a comprehensive mental status examination on Rush. *Id.* at 349-351. The ALJ accorded "great weight" to the opinion of Dr. Boggs regarding Rush's ability to work, and the ALJ stated that his opinion was supported by the treatment notes at Weems Mental Health Center. *Id.* at 16.

Boggs noted that he had previously examined Rush for disability purposes on January 15, 2009. *Id.* at 350. Boggs concluded that Rush is depressed and commented that he "didn't see much to recommend Ms. Rush for disability in this her second assessment here." He also concluded in part, as follows:

> The claimant reported more problems than she shared with Ms. Bobo at Weems where her mental status was relatively clean. Today the claimant manifests a

-8-

> number of unusual mannerisms, including eye blinks, closing her eyes, rocking, and answering some questions indirectly or cryptically. I don't believe that any of this was due to psychosis or genuine thought process problems. It may have been an affectation for disability. In any case, I don't see much reason why this claimant couldn't work as long as she avoids drugs and legal entanglements. There may be personality and relationship problems. Ms. Rush needs to find more useful things to do. . . .

*Id.* at 351.

With these record excerpts in mind, the Court turns to the standard of review.

### III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were

applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*. But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). "A reviewing court may not, however, examine only the evidence favorable to the Commissioner; it must also examine contrary evidence." *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

### IV. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff raises issues for consideration, quoted as follows:

1. The ALJ failed to give due consideration to the medical opinion of Plaintiff's primary treating physician and to non-medical opinion evidence pursuant to SSR 06-3p, SSR 96-2p, 20 CFR 404.1527, and the ruling in *Newton v. Apfel*, 209 F.3d 448, 445 (5th Cir. 2000).

    A.  Medical opinion of Dr. Soriano.

    B.  Non-medical opinion of Ms. Ericia Carter, Case Manager for Weems Community Mental Health Center.

The Court now turns to these alleged errors.

    A.  <u>Did the ALJ fail to give due consideration to the medical opinion</u>

provided by Rush's primary treating physician, Dr. Soriano?

Plaintiff argues that the ALJ failed to give proper consideration to the medical opinion evidence of Dr. Soriano, her primary treating physician.  As discussed in Section II, *supra*, Dr. Soriano provided a medical opinion concluding that Rush's abilities to do work-related activities were extremely limited.  Rush argues that the range of treatment Dr. Soriano has given her over the years provides a history on which the doctor based his opinion, and the ALJ erred when she gave Dr. Soriano's opinion "little weight."

The Commissioner argues that the ALJ properly considered all of the medical evidence of record, including Dr. Soriano's "check box" medical opinion.  The Commissioner argues that Dr. Soriano's opinion is conclusory and conflicts with other medical evidence, including Dr. Soriano's own treatment notes and the consultative examination of Dr. Azhar Pasha.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.  The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*  In other words, the ALJ "'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions

accordingly.'" *Id.* (quoting *Scott v. Heckler*, 770 F.2d at 485). Moreover, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(internal citations and quotations omitted).

In this case, the ALJ attributed "little weight" to Dr. Soriano's opinion because his records "fail to establish the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." [8] at 17. The ALJ went on to describe the doctor's opinion as "conclusory" with "little explanation of the evidence relied on" and based on Plaintiff's "subjective report of symptoms and limitations." *Id.*

To be sure, Dr. Soriano's opinion is given in a form with brief or little explanation for the basis of his opinion, and without discussion of testing or records to support his conclusions. While the ALJ did not go through each factor outlined in 20 C.F.R. § 404.1527(d)(2), as argued by Plaintiff, the ALJ gave good cause for discounting Dr. Soriano's opinion. The ALJ pointed out the weaknesses in the doctor's records, and the lack of clinical support for his opinions. The ALJ further stated that Dr. Soriano "apparently relied heavily on the subjective report of symptoms and limitations provided by the claimant . . . ." *Id.* at 17. The ALJ also discussed other medical evidence in the record that was contrary to Dr. Soriano's opinion.

Indeed, other medical evidence in the record supports the ALJ's decision to accord "little weight" to Dr. Soriano's opinion. Dr. Pasha, the examining physician, found that although flexion in Rush's left knee was limited by five degrees, and she experienced pain and crepitus in her left knee, extension of the knee was not limited, and there was no knee instability. *Id.* at 355.

Dr. Pasha found that Rush had a full range of motion in all extremity joints of the body, as well as her pelvic girdle and lumbar spine. *Id.* at 355-356. He also found that she could heel-to-toe walk, and that a cane was not medically necessary. *Id.* at 356. He also found that she had normal grip and dexterity in both hands, with 5/5 motor strength in all extremities. *Id.* His report also stated that Rush could go up 5 flights of stairs and could walk 500 yards. *Id.* at 355.

In March 2012, Plaintiff reported to the Emergency Room of the Neshoba County General Hospital with a sprained right knee. *Id.* at 394-395. Although x-rays at that time showed osteoarthritis and periarticular osteophytes, there was no acute bony pathology, and joint spaces were normal. *Id.* at 397. Thereafter, on July 25, 2012, she was examined by Dr. James Green of the Meridian Orthopaedic Clinic. *Id.* at 528. At that time, Dr. Green found that Rush had "essentially full range of motion fo both knees, with trace effusions, left and right," and that both knees were "ligamentously" stable. *Id.*

"[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Because the record shows that there is other medical evidence in the record such "that a reasonable mind might accept to support the [ALJ's] conclusion," *see Abshire*, 848 F.2d at 640, and because the ALJ outlined the reasons for rejecting Dr. Soriano's opinion, the undersigned finds that the ALJ's decision on this issue is supported by substantial evidence. Accordingly, this issue does not provide a basis for reversal or remand.

> B.  Did the ALJ fail to give due consideration to the non-medical opinion of
> Ms. Ericia Carter, Case Manager for Weems Community Mental Health Center?

Plaintiff argues that the ALJ failed to follow Social Security Ruling 06-03p when she

gave "vague and insufficient" reasons to accord "little weight" to Ms. Carter's opinion given in a March 2011 Disability Determination Services questionnaire. As recounted *supra* in Section II, Ms. Carter stated that Rush had limited ability to work with others, understand and carry out job instructions, and behave in certain job-related situations. [8] at 265-267. Carter stated that she had known Rush for just over one year. *Id.* at 265. Plaintiff argues that in giving little weight to Carter's opinion, the ALJ failed to account for the impact of her depression and anxiety on her residual functional capacity.

In the ALJ's opinion, she recounted in detail Carter's conclusions, and stated that she would give Carter's opinions little weight because Carter "is not a physician, and the limitations she sets out are not supported by her treatment notes or the other medical evidence of record." *Id.* at 16.

As a "Case Manager" with a bachelor of science degree, *see id.* at 267, Carter falls into the category of "other sources" under 20 C.F.R. §§ 404.1513(d) and 415.913(d). According to Social Security Ruling 06-03p,

> [i]nformation from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-3p, 2006 WL 2329939, *2. Ultimately, SSR 06-03p requires only that the ALJ "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ." *Id.* at *6; *see Ealy v. Colvin*, 2014 WL 3928193 (S. D. Miss. Aug. 12, 2014)(Lee, J.).

As Carter is not an "acceptable medical source," her opinion as to Rush's depression and

anxiety could not conclusively establish the existence of the alleged conditions. Thus, the ALJ's reasoning in this instance is plain to follow: a review of the records, including the contrary opinion of Dr. Boggs, demonstrates that Rush was making progress in her treatment, generally compliant in taking her medication, and not disabled. Moreover, it appears that the ALJ did not completely disregard Carter's opinion in that the final residual functional capacity accounted for some of the limitations described by Carter. The ALJ found that Rush could follow simple instructions only and should have "no more than occasional contact with the public and co-workers." [8] at 13. Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision on this issue, and this issue does not provide a basis for reversal or remand.

## V. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that substantial evidence supports her decision, and that no reversible error exists. Accordingly, the undersigned recommends that the Motion for an Order Affirming the Commissioner's Decision [11] be granted, and the Motion for Summary Judgment filed by Plaintiff [9] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 3rd day of August, 2015.

   /s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE